BRISCOE, Circuit Judge,
dissenting.
I join Part II.B of Judge Gorsuch’s dissenting opinion and all but Part II.D of Judge Tymkovich’s dissenting opinion.
*1301 I agree with Judge Gorsuch, as set forth in Part II.B of his dissenting opinion, that the best method of resolving the en banc questions now before us would be to certify to the Oklahoma Court of Criminal Appeals the question of what the phrase “clear and convincing evidence” means in the context of Rule 3.11. Short of that, however, I agree with the analysis of Rule 3.11 that is set forth in Part I of Judge Tymkovich’s dissenting opinion.
I also agree with Judge Tymkovieh that the majority is applying an unduly narrow definition to the phrase “adjudicated on the merits,” as employed in 28 U.S.C. § 2254(d), and thus join Parts II.A, II.B, and II.C of his dissenting opinion. Contrary to the views expressed throughout Judge McConnell’s opinion, I read the OCCA’s rulings in both Wilson and Wackerly as indicating that it did consider the evidence proffered in support of each application for an evidentiary hearing. Further, it is erroneous to conclude that Rule 3.11 prohibits the OCCA from considering this proffered “non-record” evidence when the very language of Rule 3.11(B)(3)(b) requires, rather than forbids, its consideration:
When an allegation of the ineffective assistance of trial counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial, and a proposition of error alleging ineffective assistance of trial counsel is raised in the brief-in-chief of Appellant, appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel. This Court will utilize the following procedure in adjudicating applications regarding the ineffective assistance of trial counsel based on evidence not in the record:
(I) In order to rebut the strong presumptions of regularity of trial proceedings and competency of trial counsel, the application and affidavits must contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence.
Rule of the Oklahoma Court of Criminal Appeals 3.11(B)(3)(b), Okla. Stat. Ann., tit. 22, ch. 18, app. (1999) (emphasis added).
My only disagreement with Judge Tymkovich concerns the analysis of our decision in Bryan v. Mullin, 335 F.3d 1207 (10th Cir.2003) (en banc) set forth in Part II.D of his dissenting opinion. While I firmly agree that Bryan does not support the majority’s position, I disagree, for the reasons outlined below, that Bryan was wrongly decided.
From arraignment through trial, petitioner Bryan was represented by four different attorneys, the first and last of whom were retained. The first attorney immediately expressed doubt as to Bryan’s competency, and sought and was granted a jury trial on the issue of competency. Bryan’s family, however, could not afford to hire any medical experts, and the jury concluded that Bryan had failed to demonstrate that he was incompetent. The first attorney subsequently withdrew and the trial court appointed an attorney from OIDS, Wesley Gibson, to represent Bryan. Gibson hired a psychiatrist to evaluate Bryan, and the psychiatrist seriously questioned Bryan’s competence to stand trial. Gibson suffered a stroke and was replaced by another OIDS attorney, Steven Hess. Hess hired Dr. Philip Murphy to conduct another examination of Bryan. Murphy concluded that Bryan suffered from a serious mental disorder and, like the psychiatrist, questioned Bryan’s competency to *1302 stand trial. Based upon the opinions rendered by the psychiatrist and Dr. Murphy, Hess planned to mount an insanity defense. But, when Hess informed Bryan and his parents of this strategy, Bryan and his parents chose to replace Hess with a privately retained attorney, Jack Freeman. Although Freeman was provided with all of the medical reports prepared by the psychiatrist and Dr. Murphy, he ultimately did not present any mental health evidence during either phase of the trial.
On direct appeal, Bryan argued that Freeman was ineffective for failing to utilize the available mental health evidence during both the guilt and penalty phases of trial. In connection with this claim, Bryan filed an application for evidentiary hearing (presumably pursuant to Rule 3.11). Although Bryan submitted affidavits in support of his application, he did not, apparently, include an affidavit from Freeman.[1] The OCCA denied Bryan’s ineffective assistance claim on the merits and, in doing so, implicitly denied his application for an evidentiary hearing. In denying Bryan’s ineffective assistance claim, the OCCA presumed that Freeman had made a strategic decision not to present any mental health evidence during the first stage proceedings. Bryan v. State, 935 P.2d 338, 362 (Okla.Crim.App.1997). The OCCA also concluded that Freeman had legitimate “strategic reasons to avoid evidence of [Bryan’s] psychological problems” during the second-stage proceedings. Id. at 363. Notably, however, the OCCA reached these conclusions without evidence from Freeman himself.
Bryan reasserted his ineffective assistance claim in his federal habeas proceedings and sought a federal evidentiary hearing. The district court granted him an evidentiary hearing on a different ineffecfive assistance issue (i.e., whether Freeman was operating under a conflict of interest because he had been retained by Bryan’s parents and promised them he would not present any mental health evidence), and decided, in its discretion, to allow Bryan to also present evidence at the hearing concerning Freeman’s strategy, or lack thereof, for failing to present mental health evidence at trial. At the evidentiary hearing, Freeman testified and explained his familiarity with the mental health evidence and his reasons for not presenting any of it at trial. According to Freeman, he chose to pursue a guilt phase defense of actual innocence because he believed the mental health evidence was insufficient to present a viable insanity defense. Further, Freeman testified that he chose not to present any mental health evidence during the penalty phase because Bryan was vehemently opposed to the use of such evidence, Freeman thought such evidence would be ineffective following a guilt phase defense of actual innocence, and Freeman was concerned that such evidence would increase the likelihood of the jury finding, as alleged by the State, that Bryan was a continuing threat.
This court affirmed the district court’s decision to afford Bryan an evidentiary hearing, concluding that Bryan had diligently sought to develop the factual basis of his ineffective assistance claim in state court by filing an application for an evidentiary hearing with the OCCA. 335 F.3d at 1215. In turn, because the resolution of Bryan’s ineffective assistance claim hinged on evidence presented during the federal evidentiary hearing regarding Freeman’s trial strategy, the court applied a de novo standard of review in analyzing that claim. Id. at 1216.
*1303 Bryan thus differs from Wilson and Wackerly in at least one critical respect: Bryan’s Rule 3.11 application for an evidentiary hearing did not include all of the necessary evidence for resolution of his ineffective assistance claim. More specifically, Bryan apparently did not submit with his application an affidavit from Freeman “regarding what he [Freeman] knew and understood about Bryan’s mental health history and, most importantly, why he [Freeman] decided not to utilize that evidence.” 335 F.3d at 1215. Thus, the OCCA, in reviewing Bryan’s Rule 3.11 application, was not privy to all of the evidence necessary to resolve Bryan’s ineffective assistance claim, and it ultimately made unsubstantiated assumptions regarding Freeman’s knowledge and motives. In other words, the OCCA’s decision was based on an “unreasonable determination of the facts in light of the evidence presented,” 28 U.S.C. § 2254(d)(2), thus making it necessary for us to review Bryan’s ineffective assistance claim de novo. See Brown v. Uphoff, 381 F.3d 1219, 1225 (10th Cir.2004) (applying de novo review to petitioner’s claim after first determining that Wyoming Supreme Court’s reasoning was contrary to clearly established federal law).
In contrast, the petitioners in Wilson and Wackerly submitted in connection with their Rule 3.11 applications all of the mitigating evidence they asserted their respective trial attorneys should have investigated and introduced at trial. Thus, the OCCA, in reviewing the applications in Wilson and Wackerly, was privy to all of the non-record evidence relevant to resolution of the ineffective assistance claims at issue. As a result, the OCCA’s decision was not, as it was in Bryan, “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). In turn, there is no basis for us to apply a de novo standard of review to the ineffective assistance claims raised by these two petitioners.

. Our decision in Bryan does not identify the affiants; perhaps they were Bryan's appellate counsel.